## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 10-00239-TLM |
| **JOHN DON SIMPLOT,** ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |

### MEMORANDUM OF DECISION

On March 14, 2014, Norpac Communities L.P. ("Norpac") filed a "Motion to Allow Claim," Doc. No. 191 ("Motion"), in the pending chapter 7 bankruptcy case of John Don Simplot ("Debtor").[1] On April 8, Kevin McDonald, Debbie McDonald, and MAPE, LLC (the "Objecting Creditors") filed an opposition to the Motion. Doc. No. 199 ("Objection"). The Court heard the matter on April 21. This Decision constitutes the Court's findings and conclusions pursuant to Rules 7052 and 9014.

**BACKGROUND AND FACTS**

    **A.**     **Preliminary evidentiary issues**

The Motion and Objection create a contested matter governed by Rule 9014. This Court has previously stated:

---

[1] Unless otherwise indicated, all chapter, section and other statutory references are to the Bankruptcy Code, Title 11, U.S.C. §§ 101–1532 (the "Code"), and all rule references are to the Federal Rules of Bankruptcy Procedure 1001–9037.

MEMORANDUM OF DECISION - 1

> [A contested matter] "ordinarily requires trial testimony in open court with respect to disputed material factual issues in the same manner as an adversary proceeding." *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 44 (9th Cir. BAP 2012); *see also* Rules 9014(d) and 9017; Civil Rule 43(a) ("At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these [bankruptcy] rules, or other rules adopted by the Supreme Court provide otherwise.")

*In re Hart*, 2013 WL 693013, *2 (Bankr. D. Idaho Feb. 26, 2013).

At the hearing, Norpac declined to offer any witness testimony or documentary exhibits.[2] Norpac did request the Court take judicial notice of the Court's own files and records. *See* Fed. R. Evid. 201. The Court granted that request, and takes judicial notice of the filings in both the instant bankruptcy, Case No. 10-00239-TLM (the "Voluntary Case"), and in an earlier involuntary bankruptcy proceeding, Case No. 10-00167-TLM (the "Involuntary Case"), filed against Debtor, and in an adversary proceeding related to the Voluntary Case, Adv. Proc. No. 10-06035-TLM (the "Adversary Proceeding").

The Objecting Creditors did not offer any testimony or exhibits, nor did they request the Court take judicial notice. However, during oral argument, their counsel did make what was characterized as an "offer of proof" about the evidence

---

[2] Norpac initially indicated that it wanted to admit an affidavit of its former counsel, Mark Ellingson, and the exhibits to the same. *See* Doc. No. 192. While generally evidence by affidavit is not appropriate in contested matters, it can be allowed on the litigants' mutual consent. *See Hart*, 2013 WL 693013, at *2 n.6. But when the Objecting Creditors raised an objection to one of the exhibits appended to that affidavit, Norpac responded by withdrawing the entirety of the affidavit and its attachments, and the same are therefore not considered.

MEMORANDUM OF DECISION - 2

he would have presented, had he attempted to do so. This approach was ineffective. "A proper offer of proof informs the trial court of what counsel expects to prove by the [offered and judicially] excluded evidence and preserves the record so that an appellate court can review the trial court's decision for reversible error." *Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir. 1995) (citing Jack B. Weinstein, 1 Weinstein's Evidence ¶ 103[03], at 103-50 (1994)). *See also* Hon. Barry Russell, Bankruptcy Evidence Manual (2014 ed.) at § 103.7. Here, the Court never excluded any evidence because the Objecting Creditors never offered any.[3] The "offer of proof" was improper, and the suggested testimony cannot be considered.

Given the parties' approach, the factual record is limited to what the Court can glean from its files and records in the Voluntary Case, the Involuntary Case, and the Adversary Proceeding.

### B. The bankruptcy cases

On January 25, 2010, three creditors filed the Involuntary Case against Debtor. Debtor filed his chapter 7 petition eight days later on February 2, 2010, commencing the Voluntary Case. Shortly thereafter, the petitioning creditors in the Involuntary Case stipulated to dismissal of that case, and the Court entered an

---

[3] The Objecting Creditors brought no witnesses to the hearing. The "offer" suggested what those witnesses (*i.e.* the McDonalds) would state in testimony.

order dismissing the Involuntary Case on March 5, 2010. The order closing the Involuntary Case was not entered until November 17, 2010, leaving several months where the Involuntary Case was open but inactive.

### C. The filed proofs of claim

#### 1. Norpac

On October 25, 2010, during the time the Involuntary Case was open but inactive, Norpac filed a proof of claim, denominated Claim No. 1-1, in the Involuntary Case.[4] This filing, made by Norpac's attorney Mr. Ellingsen, asserted a claim of $14,455,403.36, of which $3,100,000.00 was shown as secured and the remaining $11,355,403.36 as unsecured.

The claim bar date in the Voluntary Case was February 7, 2011. *See* Doc. No. 76.[5] Norpac did not file a proof of claim in the Voluntary Case until March 14, 2014, some three years after the claim bar date.[6] That proof of claim was filed

---

[4] The parties dispute the reason Norpac filed a proof of claim in the Involuntary Case seven months after that case was dismissed. Norpac argues the filing is evidence that it intended to assert a claim against Debtor, and that it was mistakenly filed in the dismissed case rather than in the pending Voluntary Case. The Objecting Creditors dispute that characterization. The Court cannot divine Norpac's reasoning, if any, from the bare documents, and neither party presented any evidence on that point. However, as discussed *infra*, whether Norpac simply erred and whether that error was "excusable" is ultimately immaterial because excusable neglect is not a requirement for allowance of an informal proof of claim.

[5] The Voluntary Case was filed as a "no asset" chapter 7 case, and creditors were initially instructed not to file proofs of claim. *See* Doc. Nos. 2, 15. On November 9, 2010, the chapter 7 trustee caused a notice of assets and claim bar date notice to be issued. Doc. Nos. 76, 77.

[6] Norpac alleges that its counsel repeatedly contacted Trustee throughout the pendency of
(continued...)

MEMORANDUM OF DECISION - 4

by Norpac's current counsel, Givens Pursley, LLP, and has been denominated as Claim No. 13-1. It asserts the same secured and unsecured amounts totaling $14,455,403.36 as shown in the proof of claim Norpac filed in the Involuntary Case.

### 2. Objecting Creditors

The Objecting Creditors filed proofs of claim in the Voluntary Case on December 17, 2010, Claim Nos. 7-1, 8-1, and later amended these proofs of claim on October 26, 2012. *See* Claim No. 7-2 (MAPE, LLC's claim of $3,912,479.74 of which $860,000.00 is shown as secured and $3,052,479.74 as unsecured), and Claim No. 8-2 (the McDonalds' unsecured claim of $102,700.54).[7]

### D. Nature of Norpac's claim

Norpac's Claim No. 13-1 establishes that the claim against Debtor arose from a loan made by Sterling Savings Bank ("Sterling") to Eaglefield, LLC, that

---

[6](...continued)
the Voluntary Case, asking about its progress and that, at one point, Trustee informed Norpac's counsel what percentage of the distribution his client could expect. Once again, however, no evidence was presented regarding these allegations. Thus, the Court must disregard them. Further, while assertions as to communications with Trustee might be relevant under cases recognizing documents as informal proofs of claim even when the documents were not filed with the court, *see, e.g., Anderson-Walker Industries, Inc. v. Lafayette Metals, Inc. (In re Anderson-Walker Industries, Inc.)*, 798 F.2d 1285 (9th Cir. 1986) (holding letter to chapter 7 trustee's counsel was an informal proof of claim), they are unnecessary here because the Complaint was filed on the Court's docket.

[7] These proofs of claim were filed by the Objecting Creditor's counsel. The MAPE, LLC claim reflects Debbie McDonald is the managing member of that limited liability company.

MEMORANDUM OF DECISION - 5

was personally guaranteed by Debtor.[8] On June 14, 2010, Sterling made a post-petition assignment of the deed of trust and related documents to Coleman Homes, LLC.  Claim No. 13-1 pt. 2 at 4, 7.  Coleman Homes, LLC subsequently assigned the same to Norpac on June 28, 2010.  Claim No. 13-1 pt. 2 at 10, 13.

### E.      The Adversary Proceeding

On May 7, 2010, Sterling filed a complaint commencing an adversary proceeding against Debtor.  *See* Adv. Proc. No. 10-06035-TLM at Adv. Doc. No. 1 (the "Complaint").  The Complaint was filed under and with reference to the Voluntary Case, and the Complaint appears on the docket of the Voluntary Case at Doc. No. 45.  The Notice of Electronic Filing for that docket entry reflects that Jeremy Gugino, the chapter 7 trustee ("Trustee") and other appearing parties received the Complaint and notice of its filing, although the Objecting Creditors did not because they had not yet appeared in the chapter 7 case.

In the Complaint, Sterling asserted Debtor owed it nearly $16 million based on Debtor's guarantee of Sterling's loan to Eaglefield, LLC, and that such debt was nondischargeable under § 523(a)(2).  On August 20, 2010, the parties to the Adversary Proceeding stipulated to substitution of Norpac for Sterling as plaintiff.  Adv. Doc. No. 13.

---

[8] A properly filed proof of claim is "prima facie evidence of the validity and amount of the claim."  Rule 3001(f).

MEMORANDUM OF DECISION - 6

On October 29, 2010, Norpac and Debtor stipulated to dismissal of the Adversary Proceeding with prejudice. Adv. Doc. No. 14. That stipulation stated:

> Nothing in this stipulation shall be deemed to limit Norpac Communities, L.P.'s ability to file a proof of claim in the United States Bankruptcy Court District of Idaho Case No. 10-00239-TLM (In re: John Don Simplot) or share in the proceeds from assets obtained by the Trustee therein.

The Court entered an Order dismissing the Adversary Proceeding pursuant to this stipulation on November 1, 2010.

### F. The pending Motion and Objection

Norpac filed its Motion on March 14, 2014, the same date that it filed its proof of claim in the Voluntary Case. The Motion alleges that Norpac inadvertently filed its proof of claim in the Involuntary Case when it meant to file it in the Voluntary Case.[9]

Setting aside the asserted reason for the error, Norpac's legal arguments in its Motion rely on the contention that the Complaint constituted an "informal proof of claim" under Ninth Circuit authority. Norpac thus argues that this informal

---

[9] Norpac asserted that the Clerk of Court should not have accepted the proof of claim in the Involuntary Case, which had been dismissed but was still open. *See* Doc. No. 191 at 5 ("Although the Involuntary Bankruptcy had already been dismissed, the Court clerk accepted the Involuntary Proof of Claim for filing and did not send Norpac's counsel a notice of rejection."). Norpac cites no authority for the proposition that the Clerk's office can "reject" filings for that alleged reason (even assuming they could somehow divine that Norpac "intended" the filing to be made in a case other than the one Norpac itself had identified). In this age of electronic case filings made directly by counsel at any time of day or night without the involvement of the Court's personnel, Norpac's criticism of the hard-working case administrators of the Clerk's office is unwarranted.

MEMORANDUM OF DECISION - 7

proof of claim is "timely" (the Complaint having been filed on May 7, 2010, prior to the February 7, 2011, claims bar date in the Voluntary Case) and, further, that the formal proof of claim that was later "untimely" filed should be treated as an amendment of the informal proof of claim and therefore "relate back."

The Objecting Creditors assert several reasons why the Motion is not well taken and should be denied. They allege that the Objecting Creditors were not served with the Complaint; that Norpac "intentionally" filed its proof of claim in the Involuntary Case rather than the Voluntary Case; that filing a proof of claim more than three years after the Voluntary Case's claims bar date ran was unreasonable; that Norpac cannot rely on the Complaint as an informal proof of claim because the Complaint was filed by Sterling, not by Norpac; and that the Objecting Creditors would be prejudiced if the Court allowed Norpac's informal claim because their anticipated distribution would shrink. None of the Objecting Creditors' submissions indicates an intent to attack the Norpac proof of claim on its merits, as opposed to simply attacking its "untimely" filing.

Trustee filed a notice that he did not object to the Motion, based on his review of the relevant law. Doc. No. 202. His Trustee's Final Report, Doc. No. 204 ("TFR"), treats Claim No. 13-1 as an amendment to a timely informal proof of claim and proposes that Norpac will share in the distributions to unsecured

MEMORANDUM OF DECISION - 8

creditors. *Id.* at 19, 22.[10]

## DISCUSSION AND DISPOSITION

### A. The "informal proof of claim" doctrine

"The Ninth Circuit has long recognized the informal proof of claim doctrine, . . . consistently applying the so-called rule of liberality in amendments to creditors' proofs of claim so that the formal claim relates back to a previously filed informal claim." *Pac. Res. Credit Union v. Fish (In re Fish)*, 456 B.R. 413, 417 (9th Cir. BAP 2011) (internal quotation marks omitted) (citing *Dicker v. Dye (In re Edelman),* 237 B.R. 146, 154 (9th Cir. BAP 1999); *Wright v. Holm (In re Holm)*, 931 F.2d 620 (9th Cir. 1991)) (other citations omitted). However, this doctrine is tempered by, first, the requirements imposed in order that an informal proof of claim can be recognized and, second, the requirement that an "amending" formal claim be allowed only "in the absence of prejudice to opposing parties." *Id.* (quoting *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.)*, 754 F.2d 811, 816–17 (9th Cir. 1985)).

Generally, the analysis of whether a late-filed claim may relate back to an informal claim proceeds in two steps: (1) whether the creditor filed or otherwise

---

[10] The TFR reflects that Trustee believes total unsecured claims of $19,516,237.98 will receive a distribution of $1,937,979.64, amounting to a 9.9% dividend. *Id.* at 22. Norpac's claim of $11,355,403.36 is the single largest unsecured claim. Subsequent to the hearing on the Motion and Objection, another creditor, Syringa Bank, withdrew its $303,439.81 unsecured claim, *see* Doc. No. 208, which will require an adjustment in Trustee's calculations and proposed distribution.

MEMORANDUM OF DECISION - 9

conveyed a document that constitutes an informal proof of claim; and, (2) if so, whether other parties would be prejudiced by allowing a formal claim to amend and relate back to an informal proof of claim.

### 1. Excusable neglect is not required

Many of the Objecting Creditors' arguments suggest a showing of "excusable neglect" is required in order for an informal proof of claim to be recognized. They are wrong.

Excusable neglect is a requirement in a separate line of cases concerning the "late" filing of claims under Rule 9006. *See Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380 (1993); *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004). But the informal proof of claim doctrine does not require a finding of excusable neglect. *Forward Progress Mmgt. Real Estate, Inc. v. Yucca Grp., LLC (In re Yucca Grp., LLC)*, 2012 WL 2086485 (9th Cir. BAP 2012). Indeed, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") in *Yucca Group* affirmed a bankruptcy court's determination that the creditor's conduct did not constitute excusable neglect under Rule 9006, and simultaneously reversed the bankruptcy court's determination that the informal proof of claim doctrine was not satisfied.[11]

Because the informal proof of claim case law does not require excusable

---

[11] As the BAP explained, although its conclusion that the creditor timely filed a valid informal proof of claim was sufficient to dispose of the appeal, it felt it was appropriate to comment on the alternative argument of excusable neglect offered by the creditor. *Id*. at *9.

MEMORANDUM OF DECISION - 10

neglect, the Court limits its analysis to whether the Complaint constitutes an informal proof of claim, and whether the Objecting Creditors would be prejudiced if the Court allowed Norpac's late-filed formal proof of claim as an amendment relating back to the Complaint.

### 2. The requisites for an informal proof of claim

An informal proof of claim "must state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable." *Id.* at *5 (quoting *Holm,* 931 F.2d at 622). The BAP has articulated a five-part test to determine if an informal proof of claim exists. There must be: (1) a presentment of a writing, (2) within the time for the filing of claims, (3) made by or on behalf of the creditor, (4) bringing to the attention of the court, (5) the nature and amount of a claim asserted against the estate. *Id.* at *6 (citing *Edelman,* 237 B.R. at 155).

There is little question that the first two factors are met. A writing—the Complaint—was presented. *See, e.g., id.* at *5–9 (addressing removal of a state court case). And that Complaint was filed on May 7, 2010, well before the Voluntary Case claims bar date of February 7, 2011. The Objecting Creditors contest the other three factors.

#### a. Filed "by or on behalf of" Norpac

The Complaint was filed by Sterling, the prior holder of the claim at issue

MEMORANDUM OF DECISION - 11

and Norpac's predecessor in interest. The Objecting Creditors argue that the Complaint was therefore not filed "by" Norpac, nor filed by Sterling "on behalf of" Norpac.

This is an unreasonably narrow and blinkered interpretation of the BAP's language describing the requirements for an informal proof of claim. It ignores the principle that "[an] assignee of a claim takes the claim with all rights attendant." *Turner v. Cal. Dep't of Real Estate (In re Turner)*, 199 B.R. 694, 697 (9th Cir. BAP 1996) (citing *Florida v. Ticor Title Ins. Co. of Cal. (In re Florida),* 164 B.R. 636, 640 (9th Cir. BAP 1994) (holding an assignment transfers the nondischargeable character of a debt)); *see also Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1091 (9th Cir. 2009) ("[U]nder general principles of assignment law an assignee steps into the shoes of the assignor.")[12]

The Objecting Creditors cite no authority indicating that the principles of assignment do not apply to informal proofs of claim. The writing (*i.e.* the Complaint) was filed "by" Sterling within the applicable claim bar date period. Norpac subsequently stepped into Sterling's shoes. The requirement that the informal proof of claim be filed "by or on behalf of" the creditor asserting the doctrine is satisfied.

---

[12] The Ninth Circuit held in *Boyajian* that reliance by the original creditor was sufficient to satisfy that element in an § 523(a)(2)(B) nondischargeability claim by a subsequent assignee. *Boyajian*, 564 F.3d at 1093. It stated that, in the absence of law stating otherwise, the general principles of assignment apply. *Id.* at 1091.

### b.   Brought to the Court's attention

The Objecting Creditors argue "there is a duty on the 'informal' claimant to bring the error it [made] to the attention of the court." Doc. No. 200 at 1. They argue Norpac failed to do so because of the three-year delay before Norpac filed its formal proof of claim.[13] But the Objecting Creditors misapprehend the requirement.

This factor requires an examination of whether the "writing" asserting the claim against the estate brings to the Court's attention such assertion and the nature and amount of such claim. The focus is on the writing constituting the alleged informal proof of claim (*i.e.* the Complaint), not on the later "untimely" formal proof of claim amending it (*i.e.* Claim No. 13-1). A complaint commencing an adversary proceeding in the case brings an asserted claim to the Court's attention, and so satisfies this element.

### c.   The nature, amount and assertion of the claim

The Objecting Creditors also question whether Norpac adequately conveyed the nature and amount, and intent to assert, the claim. In particular, they argue that the stipulation to dismiss the Complaint rendered Norpac's intent to pursue its

---

[13] In a somewhat related vein, the Objecting Creditors also argue *they* did not receive notice of the Complaint. However, under the case law, the inquiry is whether the document that sets out the details of creditor's claim was brought to *the court's* attention. The Objecting Creditors have not cited any authority establishing that other creditors need contemporaneous notice in order for a document to constitute an informal proof of claim.

MEMORANDUM OF DECISION - 13

claim against Debtor ambiguous. However, this very situation was addressed in *Yucca Group*.

In *Yucca Group*, the debtor removed a creditor's state court lawsuit to bankruptcy court, which constituted its informal proof of claim. The creditor eventually dismissed its complaint without prejudice, but failed to file a proof of claim or another complaint. The bankruptcy court below had ruled:

> If the filing of the complaint can show an intent to hold Debtor liable, it would also seem that the dismissal of said complaint, coupled with no other action on the part of the creditor, shows a lack of intent to hold Debtor liable for a debt. Or, at the very least, is so ambiguous as to what the creditor intends that it does not clearly show an intention to hold the debtor liable and therefore does not meet the elements to constitute an informal proof of claim.

*Yucca Grp.*, 2012 WL 2086485 at *3 (quoting the bankruptcy court's "tentative ruling" which that bankruptcy court later adopted as a final ruling). On appeal, the BAP reversed that decision, noting that nothing in the record definitively established the creditor's intent to abandon its claim. *Id.* at *3. The BAP held "that withdrawal of a filing constituting an informal proof of claim does not negate the intent to hold a debtor liable for a debt." *Id.* at *7 (citations omitted).

The creditor in *Yucca Group* had stipulated to dismissal without prejudice, which could arguably create ambiguity about whether the creditor intended to pursue its claim (though an ambiguity the BAP later discounted and rejected). In contrast, when Norpac here agreed to dismissal of the Adversary Proceeding with

MEMORANDUM OF DECISION - 14

prejudice, the stipulation specifically stated it was not a limitation of Norpac's ability to file a proof of claim or share in the proceeds of the estate. The stipulation not only did not definitively abandon the claim, it manifested an intent to continue pursuing that claim. Taken together and rationally read, the stipulation and dismissal of the Complaint manifests Norpac's intent to dismiss the nondischargeability aspect of its claim without dismissing the claim that Debtor owed the debt.

The Complaint was timely filed and otherwise satisfies the several requirements necessary for allowance as an informal proof of claim.

### 3. The question of prejudice

An untimely formal proof of claim is freely allowed to amend a timely informal proof of claim, unless allowing it to so amend would result in prejudice to an opposing party. *Fish*, 456 B.R. at 417. In determining whether opposing parties are prejudiced by amendment of an informal proof of claim, bankruptcy courts examine "such elements as bad faith or unreasonable delay in filing the amendment, impact on other claimants, reliance by the debtor or other creditors, and change of the debtor's position." *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 102 (9th Cir. BAP 2006) (quoting *Venhaus v. Wilson (In re Wilson)*, 96 B.R. 257, 262 (9th Cir. BAP 1988).

The Objecting Creditors contend that the three years between dismissal of

MEMORANDUM OF DECISION - 15

the Complaint and the filing of the formal proof of claim was an unreasonable delay.[14] They have not alleged that any bad faith on Norpac's part motivated the delay, or that the delay was strategic and designed to hamper potential objectors' ability to contest the claim. Nor have the Objecting Creditors shown the presence of any change in their legal positions as a result of the absence of the claim.[15]

At bottom, the argument is mostly if not solely that there will be a reduction in the distributions that they had anticipated receiving.[16] But any time an untimely formal proof of claim is allowed to amend an informal proof of claim, it is entitled to treatment and distribution along with timely filed formal claims of other creditors. That, per force, dilutes the dividends the other creditors holding claims would receive. Notwithstanding this inevitable effect, the "prejudice" of dilution of distribution is not an element in the test for allowing an informal proof of claim.

---

[14] The Objecting Creditors did not clearly tie their arguments about the unreasonableness of the three-year delay to any specific contention that, because of such delay, they were rendered unable to address or handicapped in addressing the allowability of the Norpac claim on its merits or would otherwise be disadvantaged or prejudiced if the Court granted the Motion.

[15] In oral argument at the hearing, the Objecting Creditors' counsel for the first time asserted that his clients had relied on Norpac's failure to file a formal proof of claim in making their own strategic decisions regarding the Voluntary Case. However, the Objecting Creditors failed to put on any evidence supporting that or any other factual assertion. The Court must therefore disregard it.

[16] The Objecting Creditors state that allowing Norpac's claim would "reduce the Objecting Creditors percentage of distribution from about 20% to 10%." Doc. No. 200 at 2. As mentioned earlier, Trustee's TFR projects $1,937,979.64 available for timely-filed claims of general unsecured creditors (including Norpac), resulting in a 9.9% dividend. Doc. No. 204 at 22. If Norpac's $11,355,403.36 claim were to be disallowed and excluded, and excluding the now withdrawn Syringa Bank claim of $305,439.81, *see* n.10 *supra*, there would be a total of $7,855,394.81 in claims of this class, resulting in an approximate 25% dividend.

MEMORANDUM OF DECISION - 16

It is simply the natural consequence of such allowance.

Indeed, the case law is clear: "[P]rejudice requires more than simply having to litigate the merits of, or to pay, a claim—there must be some legal detriment to the party opposing." *Id.*  A reduction in the amount of other creditors' distribution does not alone constitute prejudice.

The Objecting Creditors' strongly voiced concerns about dilution of their distribution, while understandable, are not well taken under the authorities.  Nor have the Objecting Creditors established that Norpac's delay in filing a formal proof of claim causes an identifiable prejudice of the sort contemplated by the authorities.  They point to no specific legal detriment from that delay but, rather, focus solely on the economic consequences of allowance of Norpac's claim.  That is insufficient.

## CONCLUSION

Norpac has established that the Complaint satisfies the requirements for an informal proof of claim.  The Complaint is therefore allowed as an informal proof of claim, and the filed proof of claim is treated as an amendment to the informal proof of claim.  There has been no showing of cognizable prejudice from such amendment.  Therefore, Norpac's Motion will be granted, and its counsel will provide a prosposed form of order.

DATED: May 20, 2014



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 18